UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESLIE ATKINS d/b/a
LESLIE ATKINS COMMUNICATIONS,

    Plaintiff,

    v.

BENSON J. FISCHER, *et al.*,

    Defendants.

Civil Action No. 98-800 (CKK)

**MEMORANDUM OPINION**
(November 7, 2006)

Currently before the Court is the Show Cause Order filed by Richard E. Schimel, Esq.,

attorney for Defendant The Fischer Organization, Inc. ("Fischer Organization"), regarding the

disposition of $20,000 paid to Attorney Schimel, as attorney for the Fischer Organization, by Erie

Insurance Exchange ("Erie") as part of the settlement of this action. The sum is currently on

deposit pursuant to LCvR 67.1(a)(2) in the Court Registry for the United States District Court for

the District of Columbia under Civil Action No. 98-0800 (CKK). This Court has conducted a

thorough review of the relevant filings, the entire record in this action, and particularly the

*Supplemental Decision re Motion for Partial Summary Judgment Regarding the Claims Relating*

*to the Atkins Litigation* issued by United States Bankruptcy Judge S. Martin Teel, Jr., sitting by

designation in the United States Bankruptcy Court for the District of Maryland, on April 11,

2006. *In re Benson J. Fischer*, Case No. 03-13704-NA, Adversary Proceeding No. 03-12222

(Bankr. D. Md. Apr. 11, 2006) (attached hereto, hereinafter "Supplemental Decision"). This

Court finds that Bankruptcy Judge Teel's erudite decision throughly addresses and disposes of

the arguments raised by Roger Schlossberg, the Chapter 7 Bankruptcy Trustee of the estate of

Defendant Benson J. Fischer (the "Trustee"), who asserts that the $20,000 paid to Attorney

Schimel by Erie belongs to the bankruptcy estate. In the event that the Trustee continues to

believe that the $20,000 currently on deposit in the Court Registry is rightfully considered

property of the bankruptcy estate, that issue is properly litigated before the Bankruptcy Court.

Therefore, the Court shall allow the Trustee sixty (60) days – until and including January 8, 2007

– in which to raise the issue before the Bankruptcy Court. If the Trustee does not bring such a

challenge, and provide notice to this Court of the challenge, on or before January 8, 2007, this

Court shall order the release of the $20,000 currently on deposit in the Court Registry on January

9, 2007.

## I: BACKGROUND

This case has had a long and tumultuous history and has been the subject of numerous

opinions and orders of this Court as well as of the D.C. Circuit Court of Appeals. As such, the

Court shall recite herein only those facts that are relevant to the Show Cause Order currently

before the Court. Leslie Atkins brought this action in 1998 asserting claims based on a logo and

label that she designed for a product conceived by Defendant Benson J. Fischer ("Fischer")

known as "Redneck Beer." Atkins' Complaint asserted claims against Fischer, The Fischer

Organization, Inc. ("Fischer Organization"), which contracted with Atkins to use her designs, and

Fischer Brewing, Inc. ("Fischer Brewing"), which manufactured Redneck Beer.

This case was settled in open court on January 27, 2006. Under the terms of the

settlement Erie, the general liability insurance carrier for Fischer Brewing and Fischer as its

President, agreed to pay the sum of $20,000 to Attorney Schimel, as attorney for the Fischer

Organization, for legal fees owed to Attorney Schimel. Def.'s Reply to Trustee's Resp. to Order

to Show Cause (hereinafter "Def.'s Reply") at 10-11. In exchange, the Fischer Organization

agreed to release its right to assert a potentially valid claim for an implied non-exclusive license

to use Atkins' copyrighted materials. *Id.* at 10 and Ex. F (1/27/06 Tr. of Settlement Conf.) at

14:9-13. During the settlement negotiations, counsel for the Trustee asserted that the $20,000 to

be paid to Attorney Schimel under the settlement resulted from a pre-petition cause of action of

Fischer's estate and therefore belonged to the Trustee rather than to Fischer or Attorney Schimel.

Trustee's Resp. to Show Cause Order ("Trustee's Resp.") at 4-5; *see also* Def.'s Reply Ex. F

(1/27/06 Tr. of Settlement Conf.) at 14:20-24. As a result, Erie and the Fischer Organization

agreed to place the $20,000 in the Court Registry for the United States District Court for the

District of Columbia under Civil Action No. 98-0800 (CKK), pursuant to LCvR 67.1(a)(2).

Def.'s Reply at 11; Ex. F at 14:20-24. During the Settlement Conference before this Court, this

Court authorized Attorney Schimel to file a Show Cause Order with this Court in the event that

the Trustee did not pursue his claim that the $20,000 was property of the bankruptcy estate in the

Bankruptcy Court, in order to facilitate a swift disposition of the $20,000. Def.'s Reply Ex. F at

17:18-24.

Attorney Schimel filed his Show Cause Order on March 1, 2006, requesting that the

Trustee "show cause . . . why the settlement proceeds should be part of the Bankrupt Estate of

Benson J. Fischer." Show Cause Order at 2. The Court granted the Show Cause Order on March

7, 2006 and the Trustee filed his Response to Order to Show Cause on April 18, 2006.

Thereafter, the Fischer Organization, acting through Attorney Schimel, filed a Reply to the

Trustee's Response on May 1, 2006 and Defendants Fischer and Fischer Brewing, acting through

3

separate counsel, filed a Reply to the Trustee's Response on May 4, 2006.

## II: DISCUSSION

The Trustee's Response to the Show Cause Order asserts two main arguments in support of the Trustee's contention that the $20,000 payment from Erie to Attorney Schimel, as attorney for the Fischer Organization, belongs to the bankruptcy estate. First, the Trustee argues that the settlement agreement is not enforceable as a matter of law because it is signed by Fischer on behalf of himself and on behalf of Fischer Brewing while, according to the Trustee, the Trustee "is the proper party with the requisite authority to settle prepetition causes of action on behalf of the Debtor and Fischer Brewing." Trustee's Resp. at 6. Second, the Trustee asserts that the settlement agreement "vitiates the purpose, the intent, and the plain language of the Bankruptcy Code" because the value of the defense of implied license belongs not only to the Fischer Organization, but to Fischer and to Fischer Brewing as well, and is therefore property of the bankruptcy estate. *Id.* at 6. The Reply filed by the Fischer Organization and the Reply filed by Fischer and Fischer Brewing both challenge the Trustee's contentions and argue that the $20,000 currently on deposit should be distributed to Attorney Schimel, as attorney for the Fischer Organization, in accordance with the settlement agreement. *See generally* Def.'s Reply; Fischer and Fischer Brewing Co.'s Reply to Trustee's Response to Order to Show Cause (hereinafter "Fischer Reply").

The Trustee's argument that the settlement agreement is not valid lacks merit. On November 18, 2003, this Court stayed this action with regard to Fischer due to his bankruptcy filing; however, on April 13, 2004, United States Bankruptcy Judge Duncan W. Keir signed a

Consent Order Modifying Automatic Stay, which allowed Leslie Atkins:

> to proceed with litigation in the United States District Court for the District of
> Columbia in the matter of *Atkins v. Fischer, et al.*, Case No. 1:98-cv-00800-CKK
> . . . and to allow the plaintiff therein to liquidate her claim, provided that any
> recovery shall be limited to that which is available under any applicable insurance
> policy or from the bankruptcy estate upon the filing of a proof of claim . . .

Def.'s Reply Ex. G (4/13/04 Consent Order) at 2. The settlement in this case proceeded precisely

as specified in the Consent Order signed by Bankruptcy Judge Keir, that is, Plaintiff's claim was

liquidated solely from money paid by Erie under the applicable insurance policy. During the

settlement negotiations, in addition to insisting upon monetary compensation, Atkins insisted

upon an injunction against use of her copyrighted materials. Supplemental Decision at 4. As the

Fischer Organization was the entity that contracted with Atkins to use her designs, the Fischer

Organization "was in a position to block any settlement by refusing to consent to a release of any

license it might have had to use Atkins' copyrighted materials." *Id.* at 4-5. Erie therefore

decided to pay the Fischer Organization, in the form of payment to Attorney Schimel, $20,000

from Erie's own funds in order to secure from the Fischer Organization the release necessary to

settle this litigation. *See id.* at 5; Def.'s Reply Ex. F (Tr. of 1/27/06 Settlement Conference) at

14:6-24. Furthermore, as Bankruptcy Judge Teel determined, in negotiating for the $20,000

payment from Erie to Attorney Schimel, the Fischer Organization "was represented by separate

counsel and was entitled to negotiate whatever terms it viewed as favorable to it." Supplemental

Decision at 7.

The independent decisions made by Erie and the Fischer Organization regarding the

disposition of Erie's funds are therefore outside the purview of the Trustee. In addition,

Bankruptcy Judge Teel also noted, and this Court is aware of no information to the contrary, that

5

despite having received prompt notice of the settlement of this action, the Trustee has not attempted to set aside the settlement other than to assert that the bankruptcy estate should receive the $20,000 Erie paid Attorney Schimel, as attorney for the Fischer Organization, for release of the implied license. *Id.* at 7-8. Moreover, the Trustee had notice that the stay in this case was lifted at the time that Bankruptcy Judge Keir signed the Consent Order, Def.'s Reply Ex. G (4/13/04 Consent Order) at 3, but did not seek to control this action with respect to Fischer or Fischer Brewing. As a result, the Court rejects the Trustee's late argument that the settlement in this action is not enforceable as a matter of law.

In addition, the Court finds that the Trustee's argument that the settlement violates key provisions of the Bankruptcy Code because the value of the implied license is property of the bankruptcy estate was thoughtfully considered and disposed of in Bankruptcy Judge Teel's Supplemental Decision. The Trustee's Response asserts that the defense of implied license was asserted by Fischer and Fischer Brewing throughout this litigation, and that the Fischer Organization acted on behalf of Fischer Brewing in contracting with Atkins, and that as a result "Debtor's argument that [sic] Fischer Organization alone had a claim or defense against Atkins is specious at best." Trustee's Resp. at 8. As an initial matter, Erie agreed to pay $20,000 to Attorney Schimel in exchange for the Fischer Organization's release of its potential right to assert an *affirmative defense* of implied non-exclusive license in response to Atkins' copyright claim. The Trustee is therefore incorrect in suggesting that Erie agreed to pay the Fischer Organization for the release of a pre-petition counterclaim against Atkins. In fact, no such counterclaim existed because, as Bankruptcy Judge Teel noted, the counterclaims asserted by Fischer and Fischer Brewing had all been dismissed by final judgment or by stipulation before

6

Fischer filed for bankruptcy. Supplemental Decision at 3, 5 n.1.

Furthermore, in the bankruptcy proceeding, Bankruptcy Judge Teel addressed at length a claim made by the Trustee that Fischer should be denied a discharge under Chapter 7 for concealing property of the estate "by attempting to structure a settlement in the Atkins litigation that provided for $20,000 to be paid to the Fischer Organization . . . instead of to Fischer Brewing . . . based on rights belonging to . . . Fischer Brewing." *Id.* at 2. Bankruptcy Judge Teel granted Fischer's motion for summary judgment as to this claim. In doing so, Bankruptcy Judge Teel found that the Fischer Organization, represented by its own counsel, was entitled to negotiate terms favorable to it during the settlement negotiations. *Id.* at 7. Bankruptcy Judge Teel further determined that although it might be appropriate to consider Fischer Brewing's license rights as property of the estate, "once the Trustee assumed ownership of Fischer Brewing, . . . he became responsible for protecting Fischer Brewing's assets, including its interest (if any) in the designs of Atkins." *Id.* at 8. As a result, Bankruptcy Judge Teel concluded that "the actions taken by the Fischer Organization in pursuit of its own best interests do not implicate Fischer personally for purposes of [Chapter 7]." *Id.* at 8-9.

Bankruptcy Judge Teel's well-reasoned opinion thus disposes of the Trustee's argument that the $20,000 paid by Erie to Attorney Schimel, as attorney for the Fischer Organization, constitutes property of the bankruptcy estate, and this Court shall defer to Bankruptcy Judge Teel's judgment on this issue. In the event that the Trustee continues to believe that the $20,000 currently on deposit in the Court Registry is rightfully considered property of the bankruptcy estate, that issue is properly litigated before the Bankruptcy Court.

## III: CONCLUSION

For the reasons set forth above, the Court shall allow the Trustee sixty (60) days – until and including January 8, 2007 – in which to raise before the Bankruptcy Court his claim that the $20,000 paid by Erie to Attorney Schimel, as attorney for the Fischer Organization, is property of the bankruptcy estate.  If the Trustee does not bring such a challenge, and provide notice to this Court of the challenge, on or before January 8, 2007, this Court shall order the release of the $20,000 currently on deposit pursuant to LCvR 67.1(a)(2) in the Court Registry for the United States District Court for the District of Columbia under Civil Action No. 98-0800 (CKK) on January 9, 2007.  An appropriate Order accompanies this Memorandum Opinion.


Date:   November 7, 2006

                                        /s/ Colleen Kollar-Kotelly
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge

Entered: April 12, 2006

The decision below is hereby signed.
Dated:  April 11, 2006.

Date signed April 11, 2006



S. MARTIN TEEL, JR.
U. S. BANKRUPTCY JUDGE
SITTING BY DESIGNATION

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT)

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| BENSON J. FISCHER, | ) | Case No. 03-13704-NA |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ROGER SCHLOSSBERG, CHAPTER 7 | ) | |
| TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 03-01222 |
| | ) | |
| BENSON J. FISCHER, | ) | |
| | ) | |
| Defendant. | ) | |

SUPPLEMENTAL DECISION RE MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING THE CLAIMS RELATING TO THE ATKINS LITIGATION

The plaintiff, Roger Schlossberg, is the trustee in the case

of the debtor, Benson J. Fischer, under chapter 7 of the

Bankruptcy Code (11 U.S.C.).  His complaint in this adversary

proceeding seeks to deny Fischer a discharge under 11 U.S.C.

§§ 727(a)(2), (3), (4)(A), (4)(D), and (5).  The only claim not

yet tried is the claim relating to the so-called "Atkins

litigation," a civil action Leslie Atkins brought in the United

States District Court for the District of Columbia asserting

claims (including copyright claims) based on a logo and label designed by Atkins for a product devised by Fischer known as "Redneck Beer." Atkins asserted the claims against Fischer, The Fischer Organization, Inc. ("Fischer Organization"), which contracted with Atkins to use her designs, and Fischer Brewing, Inc. ("Fischer Brewing"), which manufactured Redneck Beer using the designs.

Schlossberg's pretrial memorandum, as clarified by the trustee's opposition to Fischer's motion for partial summary judgment, has raised three claims relating to the Atkins litigation, which may be summarized as follows. First, Fischer committed a false oath, justifying denial of a discharge under § 727(a)(4), and concealed an asset of the estate from Schlossberg, justifying denial of a discharge under § 727(a)(2)(B), by failing to schedule a counterclaim he believed he had against Atkins. Second, Fischer did not reveal a malpractice claim he had against his counsel for stipulating to the dismissal of the defendants' counterclaims. Third, Fischer concealed property of the estate, justifying denial of a discharge under § 727(a)(2)(B), by attempting to structure a settlement in the Atkins litigation that provided for $20,000 to be paid to the Fischer Organization (an entity Fischer claims is owned by Fischer and his wife as tenants by the entirety) instead of to Fischer Brewing (a company whose shares are property of the estate) based on rights belonging to (according to Schlossberg) Fischer Brewing. Fischer has moved for summary judgment with

2

respect to all three claims.

The court denied summary judgment as to the § 727(a)(4) branch of the first claim in an oral decision rendered on April 10, 2006. Viewing the evidence in the light most favorable to Schlossberg, the court was compelled to conclude that Fischer believed when he signed his schedules that he had a counterclaim against Atkins, yet deliberately did not schedule that counterclaim. A deliberate failure to schedule a counterclaim further supports an inference that Fischer intended to defraud the estate. That the counterclaim had in actuality been dismissed with prejudice by the district court (pursuant to an order that was not appealed once final judgment was entered on November 30, 2001, long before the bankruptcy case was commenced in 2003) is irrelevant: Fischer made a false oath by stating that he believed that his schedules were accurate. Moreover, the debtor's false oath was material because (1) Fischer believed that the counterclaim held value at the time, which he could use as leverage in settlement negotiations with his insurer and Atkins, and (2) Schlossberg would need to investigate whether such a counterclaim had any value for the estate.

However, summary judgment is appropriate as to the § 727(a)(2) branch of the first claim. Because Fischer's counterclaim had been dismissed pursuant to an order that became final upon entry of a final judgment on November 30, 2001, no counterclaim existed that was property of the estate Therefore, § 727(a)(2)(B) does not apply.

3

Two of the counterclaims asserted in the Atkins litigation were made only by Fischer Brewing.  The debtor scheduled the shares of stock of Fischer Brewing as being solely owned by him. He had no obligation to schedule Fischer Brewing's counterclaims. Failure to schedule those counterclaims does not form a basis for denying a discharge (except to the extent Fischer thought the counterclaims were his and he failed to schedule them).

Consequently, this court granted summary judgment as to the second claim.  The two corporate defendants might have a claim against their former counsel for stipulating to the dismissal of their counterclaims without authorization, but Fischer would not. His counterclaim was dismissed pursuant to a motion to dismiss filed by Atkins.

The court granted summary judgment in its oral ruling as to the third claim regarding concealment of property of the estate incident to the parties' securing a settlement in the Atkins litigation.  In settlement negotiations in the Atkins litigation, Atkins insisted on addressing not only her monetary claims against the defendants, but also insisted upon an injunction against use of her copyrighted materials, which effectively required a release by the defendants of any implied non-exclusive license to use Atkins' copyrighted materials.  Schimel Affi. ¶¶ 38-40.

With respect to Schlossberg's third claim, the estate's interest in any such license is the only thing that Schlossberg has identified as being concealed property of the estate.

4

Schlossberg has not shown that the counterclaims of the defendants in the Atkins litigation were property of the estate concealed in the settlement negotiations. By the time of those negotiations, Fischer had learned that his counterclaim and the counterclaims of the Fischer Organization and Fischer Brewing had been dismissed, and had decided not to attempt to pursue those counterclaims.[1] Schlossberg has proffered no evidence to rebut the affidavits in support of Fischer's motion, which make clear that the counterclaims were not a basis for bargaining for receipt of anything in the settlement negotiations.

The alleged implied non-exclusive license became a bargaining chip in the settlement negotiations. Erie Insurance Company ("Erie") provided legal representation in the Atkins litigation to Fischer and Fischer Brewing pursuant to an insurance policy held by Fischer Brewing. Erie was responsible for paying, within policy limits, any judgment recovered against Fischer and Fischer Brewing. Erie was agreeable to paying $58,000 to Atkins for a release of her monetary claims. The difficulty was that the Fischer Organization was in a position to

---

[1] The counterclaims of the two corporations were dismissed by a stipulation. Fischer's affidavit filed with the district court in July 2004 recited that he had never authorized the voluntary dismissal of his counterclaim. (Apparently Fischer was under the impression that all of the counterclaims had been dismissed by stipulation.) An examination of the district court file reveals that the affidavit was filed in response to a contention by Atkins that despite the dismissals of the counterclaims, "Mr. Schimel falsely claimed that there existed counter-claims against Plaintiff in this case which Mr. Fischer wished to pursue." The affidavit was not filed as an attempt to reinstate the counterclaims.

block any settlement by refusing to consent to a release of any license it might have had to use Atkins' copyrighted materials.

The Fischer Organization took the position that if any such license existed, it belonged to the Fischer Organization (as it was that entity that entered into the contract with Atkins). Richard E. Schimel, as attorney for the Fischer Organization, negotiated a tentative settlement with Erie that the Fischer Organization would agree to the $58,000 settlement with Atkins, including the injunction Atkins wanted, so long as Erie would pay $20,000 to the Fischer Organization in exchange for the Fischer Organization releasing its license. Schimel Affi. ¶ 42. Schimel notified Schlossberg's counsel, Karen Moore, that a settlement was being reached and requested her to participate in the settlement negotiations. Moore, participating by telephone, refused to agree to the settlement on behalf of Schlossberg, and asserted that Schlossberg was entitled to any compensation for giving up any license,[2] and she refused to agree to the funds being deposited in the registry of the district court for later resolution of the rightful owner.

The other parties, with Moore absent, proceeded to enter into an agreement for $58,000 to be paid Atkins, and for entry of

---

[2] Schlossberg takes the position that if any party held such a license, it was Fischer Brewing because the Fischer Organization entered into the contract with Atkins for the purpose of facilitating the eventual marketing of Redneck Beer by the entity later formed to engage in such marketing, Fischer Brewing. Thus, Schlossberg contends, any payment for such a license owned by Fischer Brewing should come to Schlossberg as the sole shareholder and management of Fischer Brewing.

the injunctive relief Atkins sought, and Erie and the Fischer
Organization agreed that incident to the defendants agreeing to
that settlement, $20,000 from Erie would be placed in the
registry of the district court (the Fischer Organization having
persuaded Erie to increase the $15,000 amount previously
mentioned to $20,000).  The agreement with Erie specified that
the $20,000 was in exchange for release by the Fischer
Organization of any  license, preserving the right of Schlossberg
to claim that the $20,000 should be paid to him.

    These facts do not make out a § 727(a)(2)(B) claim.  The
Fischer Organization was represented by separate counsel and was
entitled to negotiate whatever terms it viewed as favorable to
it.  Fischer Brewing (whose shares are owned by Schlossberg as
property of the estate and who Schlossberg concedes has been
managed by him since at least October 2005) was represented by
separate counsel, and Schlossberg was free to direct that counsel
not to enter into the settlement.

    Schlossberg has presented no evidence that Fischer attempted
to direct Fischer Brewing's counsel in how Fischer Brewing,
through that counsel, proceeded to settle the Atkins litigation,
and the evidence demonstrates that the $20,000 payment term was
squeezed out of Erie by the Fischer Organization.  Schlossberg's
counsel was promptly notified of the settlement and could have
taken steps to set it aside as an unauthorized act on behalf of
Fischer Brewing (as he had removed prior management and made
himself management of Fischer Brewing).  At least at this

juncture, Schlossberg has not attempted to set aside the settlement other than to assert that Fischer Brewing, not the Fischer Organization, had any ability to assert an implied non-exclusive license to use Atkins' designs and thus should receive the $20,000 Erie paid for release of that license.

In its oral decision, the court ruled that any harm to Fischer Brewing was not harm directly to the estate.  The court concluded that Fischer Brewing, but not the bankruptcy estate, owned any right to compensation for any license rights that it held and that Fischer Brewing held any right to sue Fischer for any interference with its right to such compensation.

The court noted in its oral ruling that Schlossberg had not stated in his pretrial memorandum that grounds exist for disregarding the corporate form.  The court retracts that ruling as unnecessary.  Fischer Brewing is no longer an operating company, and in effect Schlossberg holds its claims as property of the estate, such that viewing the evidence in the light most favorable to Schlossberg it might be appropriate to view any license rights of Fischer Brewing to constitute property of the estate.

But this retraction does not alter the court's conclusion with respect to Schlossberg's third claim.  Once Schlossberg assumed ownership of Fischer Brewing and displaced Fischer as president and CEO of the company, he became responsible for protecting Fischer Brewing's assets, including its interest (if any) in the designs of Atkins.  The actions taken by the Fischer

8

Organization in pursuit of its own best interests do not
implicate Fischer personally for purposes of § 727, and even if
they did, those actions (by Fischer through the Fischer
Organization) do not constitute a "transfer[], remov[al],
destr[uction], mutilat[ion], or conceal[ment]" of assets of the
estate as required to bar the entry of discharge under
§ 727(a)(2).

[Signed and dated above]

Copies to: Office of the United States Trustee; all counsel of
record.